# THE ATTORNEY GENERAL
## OF TEXAS
AUSTIN 11, TEXAS
GERALD C. MANN


Honorable Joe Gordon
County Attorney
Gray County
Pampa, Texas

Dear Sir:

Opinion No. O-2205
Re: Constitutional and statutory
tax exemption of the gas system
owned by an incorporated city but
serving an incorporated village 8
miles distant for profit.

By your letter of April 9, 1940, you submit for the opinion of this Department the following question, which we quote from your letter, together with the accompanying factual situation:

"May I have your opinion as to whether an incorporated city which owns its own gas system is subject to taxation by an independent school district as to that portion of the system extending from its city limits a distance of approximately eight miles to and throughout an incorporated village.

"The City of McLean purchased its gas system from a private owner and included in the system was a gas line from McLean to Alanreed, a distance of eight miles, together with service lines and meters in Alanreed. Part of this line and all service lines are in Alanreed Independent School District. This district has assessed that portion of the property in its district for taxation.

"The operation of the distribution system in Alanreed is not one primarily for the benefit of the people of Alanreed, but for the people residing in McLean, as the residents of McLean are selling gas to the residents of Alanreed for a profit; that is, at the same rate which the residents of Alanreed paid for this service at the time this utility was owned by a private concern."

Three provisions of the Constitution of Texas are pertinent to this inquiry which we quote as follows:

"Article VIII, Section 1. Taxation shall be equal and uniform. All property in this State, whether owned by natural persons or corporations, other than municipal, shall be taxed in proportion to its value, which shall be ascertained as may be provided by law. . . .

"Article VIII, Section 2. . . . but the Legislature may, by general laws, exempt from taxation public property used for public purposes. . . .

"Article XI, Section 9. The property of counties, cities and towns, owned and held only for public purposes, such as public buildings and the sites therefor. Fire engines and the furniture thereof, and all property used, or intended for extinguishing fires, public grounds and all other property devoted exclusively to the use and benefit of the public shall be exempt from forced sale and from taxation, provided, nothing herein shall prevent the enforcement of the vendors lien, the mechanics lien or builders lien, or other lines now existing."

Pursuant to the foregoing constitutional provisions, the Legislature of Texas, by Article 7150, Vernon's Annotated Civil Statutes, enacted into law the following tax exemption:

"The following property shall be exempted from taxation, to-wit:

"4. Public property. All property, whether real or personal, belonging exclusively to this State, or any political subdivision thereof, . . ."

It is evident from the foregoing constitutional and statutory provisions that exemption from taxation, in connection with municipal property and purposes, is not dependent upon <u>ownership</u> of the property by the municipality in question, but rather upon the <u>use</u> to which such property is put, that is, the property must be devoted to or used for public purposes.

Regarding the use of municipally owned property which will give rise to the above constitutional and statutory exemptions, it was held in the case of Corporation of San Felipe de Austin v. State, 229 S.W. 845: "the test is not whether the property is used for governmental purposes. That is not the language of the Constitution. This court has never adopted that narrow limitation and the weight of authority is opposed to it. Much property of municipalities exempted from taxation has, and can have, no governmental use. The test is whether it is devoted exclusively to a public use."

To the same effect is Galveston Wharf Co. v. Galveston, 63 Tex. 14, holding that the interest of a city in a public wharf, represented by stock in a wharf corporation, was not taxable under the Constitution. There is nothing "governmental" in the public use of a wharf.

In fact, the ownership and operation by a municipality of public utilities, such as the gas system involved here, has been held, in the case of San Antonio Independent School District v. Water Works Board of Trustees, et al, 120 S.W. (2d) 861, to be a "proprietary function" in contradistinction to a "governmental function," in that such utilities pertain to the business affairs administered for the special benefit, health and welfare of the urban community embraced within the corporate boundaries. But despite this "non-governmental" nature of the public utility systems owned and operated by municipalities, in Texas, such properties have been held, by all decisions of this State, to be exempt from taxation as "public property used for public purposes," within the constitutional and statutory provisions.

Moreover, the fact that a portion of the gas system under consideration here is located beyond the limits of the city of McLean does not, of itself, militate against the exemption of such system from taxation. In the case of City of Dallas v. State, 28 S.W. (2d) 927, property located in Denton County, but owned by the City of Dallas and used as a reservoir to furnish water to the citizens of Dallas, was held to be exempt from taxation, under the pertinent constitutional and statutory provisions.

Nor does the fact that revenue is derived by the City of McLean from the operation of this municipally owned gas system operate to remove or nullify the exemption from taxation, accorded by the Constitution and statutes, if it is otherwise available, under the principles hereinafter discussed. The weight of authority is clearly to the effect that all property lawfully owned and held by cities and towns for public purposes, though a source of revenue or profit which was paid into the City Treasury and used for municipal purposes by the city, is exempt from State taxation, the dominant purpose in the use having direct reference to the purposes for which the property is authorized by law to be owned and held, and tending immediately and directly to promote such purposes. 61 C. J. 431; Commonwealth v. City of Richmond, 61 S.E. 69; Town of North Haven v. Borough of Wallingford, 111 Atl. 904; Commissioners v. Covington, 107 S.W. 231; Town of Orange v. City of Barre, 115 Atl. 238.

But in each of the cases cited, it appears from the facts that the income or revenue of the municipality in question was derived from the sale of gas, water, electricity, etc. to consumers within the limits of the municipality owning the public utility, or, incidentally, to consumers outside the city limits but adjacent thereto. The question presented here is whether or not the use of a part of the gas system owned by the City of McLean to service, for a profit, the inhabitants of the town of Alanreed eight miles from the limits to the city of McLean removes the instant case from the cases cited, so as to make the property taxable.

We have found no authorities in Texas bearing upon this question, and, of necessity must resort to the persuasive authorities of other jurisdictions. There are two unconflicting lines of such authorities, one holding that the exemption from taxation of municipally owned works and utilities is not lost because of an incidental use for a private purpose from which revenue is derived, the other holding that the use of properties by a city to serve inhabitants beyond the city limits, which is neither incidental nor insignificant, is not a use for public purposes within the meaning of the exemption requirements of the Constitution and statutes, especially with respect to city property outside the city limits which is used exclusively to serve residents in the outside territory.

Supporting the principle of exemption upon the basis of incidental use are the cases of Commonwealth v. City of Richmond, Commonwealth v. City of Covington, Town of North Haven v. Borough of Wallingford, and Town of Orange v. City of Barre, supra.

Under the facts before the court in the case of <u>Commonwealth v. City of Richmond</u>, it appeared that the adjacent town of Barton Heights petitioned the city council of Richmond to supply about forty thousand galls of water daily on such terms as should seem to the city reasonable and fair, until such time as artesian wells could be drilled to supply the town of Barton Heights with ample water. This request was granted by ordinance which was twice renewed and extended. In addition, the City of Richmond furnished water to the Richmond Locomotive Works, a branch of the American Locomotive Works, a large and extensive plant located adjacent to the territorial limits of the City of Richmond, and employing several thousand operatives whose residence is within the city limits. The city, under the same conditions, furnished water to the repair shops of the Chesapeake and Ohio Railroad and the Seabord Air line Railway, and also to M. T. Cottrell, living on the north side of Broad Street adjacent to the city limits, and a few other parties under like conditions. The aggregate amount of revenue derived from furnishing water to industrial plants and non-residents beyond the city limits for the year 1911 amounted only to the sum of $6,455.28.

Under a constitutional provision exempting certain properties, including "property directly or indirectly owned by the State, however held, and property lawfully owned and held by counties, cities, towns and school districts used wholly and exclusively for county, city, town or public school purposes," the court denied the contention of the Commonwealth that the public utility property of the City of Richmond was taxable because the city had gone beyond its charter rights in furnishing water and gas to persons residing beyond its corporate limits, and thus was engaged in "competitive busines" in the matter of furnishing water and gas to consumers for compensation. The court declared that the constitutional exemptions from taxation above quoted would not be "defeated or annulled by the mere fact that revenue or profit over and above the cost of maintenance, is realized from the property; that if the use made of the property so held has direct reference to the purposes for which it is by law authorized to be owned and held, and tends immediately and directly to promote those purposes, then its use is within the provisions exempting the property from taxation, although revenue or profit is derived therefrom as incident to such use."

The case of <u>Commonwealth v. City of Covington</u>, supra, turns upon a constitutional exemption from taxation more closely paralleling that of our Texas Constitution, and reading: "There shall be exempt from taxation public property used for public purposes." It was sought by the Commonwealth of Kentucky to recover from the City of Covington, in Kenton County, taxes upon lands, reservoirs, water mains, pumping stations, engines, etc. situated in Campbell County and used as a water plant or system for supplying water to the inhabitants of the City of Covington and certain citizens of Campbell County residing near its reservoir and water mains. In holding the constitutional exemption from taxation to be applicable to this property, the court said:

"The fact that appellee's reservoir, pumping station, and some of its mains lie outside of the municipality and in another county, or that it may incidentally derive some revenue from the use of the water by persons living

near its mains and outside the city limits, cannot affect the question. Very few cities have such property situated within their corporate limits, and in many instances it has been found necessary to locate it miles away. The test is: Is the property used for public purposes; that is, primarily for the health, comfort, and welfare of the inhabitants of the city? If so, it is exempt from taxation. We do not mean that a city may enter upon the business of maintaini: a waterworks system for other cities or towns, but only that the fact that it incidentally furnishes water to a considerable number of persons in proximity to the city, without injury to the rights of the inhabitants of the city, does not alter the public character or use of the property, or make it subject to taxation."

In the case of Town of Orange v. City of Barre, supra, the public use of the water system of the municipality in question was established so as to bring it within the provisions of the statute relating to exemptions of property used for public purposes, despite the fact that "at certain seasons of the year, more water is supplied by the defendant water system than is required for its municipal purposes, which is sold by the defendant for mechanical uses."

Opposed to the principles of tax exemption announced in the foregoing cases, because of a difference in the facts, we find the cases of Mayor and Aldermen of City of Knoxville v. Park City, 172 S.W. 286; Stiles v. Newport, 56 Atl. 662, and Warwick County v. City of Newport News, 151 S.E. 417, each and all illustrative of the principle of law that a use of municipally owned works and utilities to serve inhabitants beyond the city limits, which is neither incidental nor insignificant, is not a use for public purposes within the meaning of tax exemption requirements.

The contentions and facts involved in the case of Mayor and Aldermen of City of Knoxville v. Parks City, supra, may be stated from the opinion in that case as follows:

"The bill of complaint proceeds upon the theory that the property attempted to be taxed is exempt because owned by a municipal corporation; while it is the contention of defendant city that such portion of the plant of complainant which is situated within the boundaries of Park City is not used exclusively for public or corporation purposes of the complainant municipality, but is used in serving Park City for profit.

"It appears that the west boundary line of Park City is almost contiguous to the east boundary line of the city of Knoxville for a distance of about one mile. There intervenes what is described as a neutral strip, about 300 feet wide, on which factories are located.

"Prior to 1909, both of the cities were served by a private water corporation, the Knoxville Water Company, the plant of which was located partially in the territory of each of them. Under legislation later noted, the city of Knoxville in 1909 acquired the plant of this company, including that part situated in Park City, and assumed the contract then in existence between the company

and Park City, and has since operated its plant there.

"The proof establishes that the plant of complainant city lying within the territorial limits of Park City is, as to use, independent of and not necessary to that part of the system which is in Knoxville and there in use for that city and its inhabitants. No mains for the Knoxville supply are laid in Park City.

"Since the purchase of the plant of the Knoxville Water Company, the City of Knoxville has charged the inhabitants of Park City for water at rates which are 20 per cent higher than its rates to its own inhabitants; and a profit is made from the Park City plant. A portion of these profits has been used to extend water lines into and to serve a third incorporated town, Lonsdale, which is not adjacent to the City of Knoxville."

The constitutional and statutory exemptions involved in this case are quoted respectively, as follows:

"All property real, personal or mixed, shall be taxed, but the Legislature may except such as may be held by the state, by countiesm cities or.towns, and used exclusively for public or corporation purposes.

"That all property, real, personal and mixed shall be assessed for taxation for State, county and municipal purposes, except such as is declared exempt in the next section.

"Sec. 2. That the property herein enumerated and none other shall be exempt from taxation; All property of . . . any incorporated city, town, or taxing district in the state that is used exclusively for public or municipal corporation purposes."

The court held that the physical properties of the water system of Knoxville located within the boundaries of Park City would not be exempt from taxation so far as they served the municipal purposes of the latter municipality, because they did not meet the constitutional and statutory tests of being employed exclusively for public purposes.

In the case of Warwick County v. City of Newport News, it was held that where city acquired a water works system operating in city and in territory contiguous to city, pursuant to certain authorizing statutes, and received more than one third of total revenue from sale of water to persons outside of city, the said water system was liable to taxation because not used either wholly or exclusively for public purposes of city, under pertinent tax exemption provisions of the Constitution. The court recognized the distinction pointed out in the two lines of authorities above discussed with the following language:

". . . If the outside use be incidental or the revenue therefrom so small as to be negligible, the property is still exempt from taxation, but if the outside use is essential (i.e., imposed as an inherent duty of the city as the owner of the property) and in addition the revenue derived is substantial, then the property is not exempt from taxation. . . .

". . . We do not mean to intimate that, as the owner of the waterworks, a municipality may not as a mere incident to its business supply relatively limited quantities of water to persons outside of its territorial limits without subjecting its property to taxation. We do mean to say that, under the facts of this case, the supplying of water by the city of Newport News to a large number of consumers in Warwick County and Elizabeth City County, at reasonable rates, with the right to extend its mains to supply water to the citizens of York and James City counties, cannot be held to be a mere incident to supplying water to its own citizens, without disregarding the manifest import of the Constitution. § 183."

In Stiles v. Newport, supra, it was held that where the municipal corporation of Newport had constructed a branch line in another municipality, West Derby, which was devoted wholly to the needs of the latter, and furnished its water supply, that system was taxable by West Derby. The Court, in language highly applicable to the instant situation, said:

"The municipal duty of the village of Newport as regards the maintenance of mains and hydrants is confined to its territorial limits. The municipal relation which enters into the question of domestic supply is confined to its own inhabitants. The furnishing of water to the inhabitants of the defendant village is held to be a public use upon the ground that the making of such a provision, while not strictly a municipal duty, is protective of the public health, and therefore a public use within the meaning of the laws relating to taxation. But this reasoning fails when the furnishing of water to the village of West Derby is in question. We see no ground upon which the West Derby branch of this system can be held to be devoted to a public use, either as regards fire protection or domestic needs. The village of Newport owes no municipal duty to the village of West Derby or its inhabitants, and has no municipal interest there. Its sale of water to that village and its inhabitants is for the revenue obtainable thereby, independent of any connection with municipal duty or interest. . . .

"Here, the village of Newport has built and installed a branch outside its corporate limits, which is devoted wholly to the needs of another village, and can never be made available for its own municipal service; and the question is whether the property so created and circumstanced shall be treated as serving an incidental and therefore a public use. It might not be easy to frame a safe and acceptable definition of an incidental use, but we think it may safely be said that the supplying of the municipal and domestic needs of another municipality through a complete system of distribution pipes and hydrants created for that purpose is not such a use. The plaintiff has assessed the hydrants located in Derby, and we hold that they are taxable."

From a careful analysis and consideration of the authorities cited and discussed in support of the two lines of decisions regarding tax exemption of municipally owned utilities, we are constrained to hold that the gas system owned by the City of McLean but located outside the city limits to a distance of eight miles and servicing the gas needs of the incorporated village of Alanreed, is not exempt from ad valorem taxes levied by Alanreed Independent School

District, under pertinent constitutional and statutory tax exemption provisions, because such property is not "public property used for public purposes," within their intendment. The City of McLean has no public or corporate purposes to serve within the corporate limits of Alanreed. The furnishing of gas and other utilities to the inhabitants of Alanreed is the municipal purpose and duty of Alanreed and not McLean. It is not enough that the gas system in question is owned by McLean, but such properties, to be entitled to the tax exemption afforded by the Constitution and statutes, must be "public property used for public purposes." And this tax exemption test is not met by the facts of the instant case where it appears that the City of McLean undertakes to continuously supply gas to the inhabitants of another incorporated municipality eight miles distant. This is not the incidentaly supplying of water, gas, electricity, etc. to persons and industrial corporations close to the city limits, or the sale of a temporary over-supply of such commodity, within the rule of law announced in these decisions holding that an incidental or insignificant use of such property will not defeat the tax exemption.

Trusting that the foregoing fully answers your inquiry, we are

Yours very truly

ATTORNEY GENERAL OF TEXAS

By /s/ Pat M. Neff, Jr.

Pat M. Neff, Jr.
Assistant

PMN:N:ogw

APPROVED JUNE 10, 1940
/s/ Gerald C. Mann
ATTORNEY GENERAL OF TEXAS

APPROVED
Opinion Committee
By B W B
Chairman